UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YUKA LEANDER, individually and on behalf of others similarly situated,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>ACCENT CONTROLS, INC., and DOES 1 through 50, inclusive,<br><br>　　　　　　　　　　　　Defendants. | Case No.:  24-cv-01821-GPC-SBC<br><br>**ORDER GRANTING MOTION TO REMAND**<br><br>**[ECF No. 7]** |

　　　Defendant removed this case to federal court on October 9, 2024.  ECF No. 1.  Before the Court is Plaintiff's motion to remand, which was filed on November 8, 2024.  ECF No. 7.  Defendant filed an opposition, ECF No. 11, and Plaintiff replied, ECF No. 13.  The primary issue for the Court to decide is whether the amount in controversy meets the $75,000 threshold for diversity jurisdiction under 28 U.S.C. § 1332(a)(1).  The Court has reviewed the Complaint, the motion, and other papers on the record in this case, and finds the matter suitable for decision on the papers.  For the reasons below, the Court GRANTS Plaintiff's motion to remand.

///

## BACKGROUND

Plaintiff Yuka Leander ("Plaintiff") was employed by Defendant Accent Controls, Inc. ("Defendant" or "ACI") as a tractor trailer truck driver from September 9, 2022 to June 6, 2024. ECF No. 1-4 ("Compl.") ¶ 15. On September 5, 2024, Plaintiff brought a lawsuit against Defendant for California state law claims in the San Diego County Superior Court, individually and on behalf of a putative class. *Id.* ¶ 1. Plaintiff alleges that Defendant committed "wage and hour violations of the California Labor Code." *Id.* The putative class is defined as "[a]ll current and former non-exempt employees who worked for Defendants in California at any time from four years (plus the additional 178-day statutory tolling period under Emergency Rule 9) prior to the filing of this action through the date of class certification." *Id.* ¶ 21.

Plaintiff alleges that Defendant had an "unlawful policy and practice of requiring Plaintiff and class members to work off-the-clock without compensation." *Id.* ¶ 27. For example, Plaintiff alleges that Defendant "required" its employees to load their trailers before clocking in, *id.*, "routinely required" her to arrive 30 minutes early to help other employees load their trailers without clocking in, *id.* ¶ 28, and "required" its employees complete security checks for 10-15 minutes before their shifts without clocking in, *id.* ¶ 29. Plaintiff alleges that during the pay period from January 16, 2024 to January 31, 2024, she worked 96 hours but was compensated at her base pay rate for all 96 hours, when in fact she was entitled to overtime pay for at least some of those hours. *Id.* ¶ 34. Further, Defendant allegedly had "an unlawful policy and practice of requiring Plaintiff and class members to work through or during their uncompensated meal periods." *Id.* ¶ 30. Defendant allegedly "frequently" directed Plaintiff to work through her meal periods, while clocked out, *id.*, and, more generally, "Plaintiff and the class member[s] routinely experienced missed, late, short, and/or interrupted meal periods," *id.* ¶ 41.

Based on these allegations, Plaintiff brings the following California law claims: (1) minimum wage violations (Labor Code §§ 1194, 1194.2, & 1197); (2) failure to pay all overtime wages (Labor Code §§ 510 & 1194); (3) meal period violations (Labor Code §§ 226.7 & 512); (4) rest period violations (Labor Code §§ 226.7 & 516); (5) failure to pay all paid sick leave wages (Labor Code §§ 200, 218, & 246 *et seq.*); (6) unpaid vacation wages (Labor Code §§ 201-03, 227.3, 1194, & 1198); (7) untimely payment of wages (Labor Code §§ 204, 210, & 218); (8) wage statement violations (Labor Code § 226); (9) waiting time penalties (Labor Code §§ 201 *et seq.*); (10) failure to reimburse business expenses (Labor Code § 2802); (11) UCL violations (Cal. Bus. & Prof. Code §§ 17200 *et seq.*); and (12) an unlawful employment condition (Labor Code § 432.5; Cal. Bus. & Prof. Code §§ 16600 *et seq.*). *Id.* ¶¶ 58-116.

Defendant filed a notice of removal on October 9, 2024. ECF No. 1. The removal is based on diversity of citizenship jurisdiction. *Id.* ¶ 10. Defendant contends that the parties are citizens of different states, *id.* ¶ 11-13, and that the amount in controversy exceeds $75,000, *id.* ¶ 14. Plaintiff does not allege a specific amount in controversy in the Complaint, *see generally* Compl., and Defendant does not put forth an exact figure that it believes to be in controversy, ECF No. 1 ¶ 19. However, Defendant argues that, based on the allegations, Plaintiff's potential damages for overtime wages, meal and rest break premiums, and various statutory penalties could plausibly be as much as $170,000. *See id.* ¶¶ 21-25. With the inclusion of reasonable attorneys' fees, Defendant argues that the ultimate amount in controversy far exceeds the $75,000 threshold. *Id.* at 8-9 ¶¶ 22-

24.[1][2]  However, in opposing the motion to remand, Defendant refined its calculation and estimated the amount in controversy to be $81,977.20.  ECF No. 11 at 8.

Plaintiff filed the instant motion to remand on November 8, 2024.  ECF No. 7. Plaintiff argues that the amount in controversy does not exceed $75,000, and that the Court thus cannot exercise diversity citizenship over this action.  ECF No. 7-1.

## LEGAL STANDARD

A defendant may remove a civil action brought in state court if the action "might have been brought originally in federal court."  *Smith v. Mail Boxes, Etc.*, 191 F. Supp. 2d 1155, 1158 (E.D. Cal. 2002) (citing 28 U.S.C. § 1441).  Thus, a case that could have been brought in federal court based on diversity of citizenship is removable.  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); 28 U.S.C. § 1441(b).

"Removal on the basis of diversity jurisdiction requires that the parties be completely diverse and that the amount in controversy exceed $75,000."  *Magnum Prop. Invs., LLC v. Pfeiffer*, 2019 WL 459194, at *2 (S.D. Cal. Feb. 6, 2019); 28 U.S.C. § 1332(a)(1).[3]  Generally speaking, "a strong presumption against removal applies in the

---

[1] All page numbers in this Order refer to CM/ECF pagination, unless otherwise noted.

[2] In its notice of removal, Defendant misnumbered the paragraphs following paragraph 25 on page 8, which pertain to attorneys' fees.  *See* ECF No. 1 at 8-9.  As such, to avoid confusion here, the Court provides CM/ECF page numbers for this specific citation.

[3] Plaintiff has brought her claims as a putative class action, Compl. ¶ 21, but notably does not seek removal under the Class Action Fairness Act ("CAFA").  "CAFA gives federal courts jurisdiction over certain class actions, defined in [28 U.S.C.] § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84-85 (2014).  While CAFA expanded federal jurisdiction over class action lawsuits, putative class actions can still be removed to federal court based on run-of-the-mill diversity jurisdiction.  If the named plaintiff satisfies the diversity requirements, federal courts can exercise supplemental jurisdiction over the other putative class members' claims if they arise out of the same case or controversy.  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005) ("where the other elements of jurisdiction are present and at least one named plaintiff in the action satisfies the amount-in-controversy requirement, [28 U.S.C.] § 1367 does authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those

typical diversity case." *Anderson v. Starbucks Corp.*, 556 F. Supp. 3d 1132, 1135 (N.D. Cal. 2020).

When the amount in controversy is contested, "courts first look to the complaint." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). If the complaint does not state an amount in controversy, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the amount in controversy requirement is met. *Id.* The parties may submit "summary-judgment-type evidence relevant to the amount in controversy at the time of removal," such as affidavits or declarations. *Id.* The defendant may rely on reasonable assumptions in reaching its estimated amount in controversy, *Anderson*, 556 F. Supp. 3d at 1136, but the defendant may not rely on "mere speculation and conjecture," *Ibarra*, 775 F.3d at 1197.

## DISCUSSION

Here, the parties do not dispute whether the parties are diverse. *See* ECF No. 11 at 3; ECF No. 7-1 (absence). Indeed, the Plaintiff was a resident of California at all relevant times and Defendant is incorporated in and has its principal place of business in Missouri. ECF No. 1 ¶ 11; ECF No. 1-2 at 2 ¶¶ 4-5.

In the motion to remand, Plaintiff only disputes whether the amount in controversy exceeds $75,000. ECF No. 7-1 at 3-10. Defendant, relying on Plaintiff's allegations and reasonable assumptions based on the allegations, believes that the amount in controversy does exceed $75,000. ECF No. 1; ECF No. 11. Specifically, the parties disagree about the amount in controversy for four broad categories of damages: (1) unpaid overtime

---

claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction"). Because CAFA is not at issue here, the Court will address whether the named plaintiff individually meets the standard diversity jurisdiction requirements. *See, e.g., Hermosillo v. Apple Core Enters., Inc.*, 2024 WL 4970969, at *2-3 (C.D. Cal. Dec. 4, 2024) (assessing motion to remand putative class action for wage and hour violations based on standard diversity jurisdiction principles).

wages, (2) meal and rest break premiums, (3) statutory penalties, and (4) future attorneys' fees. The Court will address each in turn.

### I. Overtime Wages

The parties dispute the potential damages for Defendant's alleged overtime wage violations. Defendant assumes 16 hours of unpaid overtime each pay period based on Plaintiff's allegations as to one specific pay period. ECF No. 1 ¶ 21. Plaintiff disputes whether Defendant can properly assume that this number of unpaid overtime hours remained consistent across each pay period during which she worked at ACI. ECF No. 7-1 at 8-9.

Plaintiff alleges in the Complaint that, from January 16, 2024 to January 31, 2024, she worked 96 hours. ECF No. 1-4 at 11 ¶ 34. To the extent she worked more than eight hours in a day or 40 hours in a week during this period, she should have been paid one-and-a-half times her base hourly rate. *Id.* Instead, she was paid at her base hourly rate for all 96 hours worked during this period. *Id.* Defendant calculates that, at a minimum, Plaintiff worked a total of 16 hours of overtime during this period, which would amount to $788.64 in overtime wages for the pay period. ECF No. 1 ¶ 21. Defendant then assumes this same number of unpaid overtime hours per pay period across the 24 months Plaintiff was employed and arrives at an estimated $37,854.72 in alleged unpaid overtime wages. *Id.* Plaintiff contends that this assumption is improper because it finds no basis in the Complaint and Defendant has provided no other evidence to support it. ECF No. 7-1 at 8-9. Defendant asserts that the calculation is "based on a reasonable interpretation of the allegations in the Complaint." ECF No. 11 at 5.

The Court must determine an appropriate violation rate here based on the vague allegations in the Complaint. As Defendant points out, Plaintiff does allege a "company-wide practice of requiring off-the-clock work without compensation," Compl. ¶ 3, and at other points calls it a "policy and practice," *id.* ¶ 27. Generally, "the Ninth Circuit

distinguishes between complaints of 'uniform' violations and those alleging a 'pattern and practice' of labor law violations." *Dobbs v. Wood Grp. PSN, Inc.*, 201 F. Supp. 3d 1184, 1188 (E.D. Cal. 2016). For example, in *Ibarra*, the court reasoned "that a 'pattern and practice' of doing something does not necessarily mean *always* doing something," particularly where the complaint does not allege that the "pattern and practice" is "universally followed every time." 775 F.3d at 1198-99 (emphasis in original). The question for the Court is whether Defendant's assumption that Plaintiff was owed roughly 16 hours of overtime every pay period is grounded in allegations of "uniform" violations, as opposed to a "pattern and practice" of violations.

To be sure, there are some allegations in the Complaint that suggest that violations were frequent. Plaintiff alleges that employees "were required to walk from the gate entrance to their vehicle and load the trailer with goods before clocking in," Compl. ¶ 27, that she was "routinely required" to work uncompensated for 30 minutes before her shifts, *id.* ¶ 28, and that employees "were required to arrive at the job site about 10-15 minutes before their scheduled time . . . but they were not allowed to clock in," *id.* ¶ 29. But these allegations do not support an assumption that Plaintiff clocked 16 hours of unpaid overtime every single pay period. Defendant relies on *Garcia v. Acushnet Co.*, 2022 WL 1284820 (S.D. Cal. Apr. 29, 2022), to support its assumption, but this case cuts against its argument. There, the court found Defendant's assumed 100 percent violation rate to be reasonable, but in addition to alleging a "pattern and practice" of violations, the complaint further alleged that the plaintiffs were required to travel "every day" given the location of the clock-in and break area. *Id.* at *5. Here, there are no similar allegations that Plaintiff worked a certain number of uncompensated overtime hours "every day" or "every week." Instead, Plaintiff alleges "routine" and "required" instances of uncompensated overtime. *See* Compl. ¶¶ 27-29. While such allegations suggest frequent violations, there is still no evidence to support the assumption of 16 uncompensated

overtime hours per pay period. *See Anderson*, 556 F. Supp. 3d at 1137 ("[t]o be sure, 'regularly' does 'not necessarily mean *always* doing something'") (quoting *Ibarra*, 775 F.3d at 1198-99).

The court's decision in *Roth v. Comerica Bank*, 799 F. Supp. 2d 1107 (C.D. Cal. 2010) is further instructive here. There, the defendants assumed that each class member worked three to five hours of overtime per week based on plaintiff's allegation of "regular" and "consistent" instances of overtime work. *Id.* at 1124. However, the court reasoned that these allegations did not support defendants' assumption, and defendants did not support the assumption with other evidence, such as average hours worked per week by class members. *Id.* Thus, the court found "that defendants' calculation is speculative to the extent it relies on this assumption." *Id.* Here, the Court is dealing with a similar shortcoming. While there is an indication of the frequency of violations, there is still no support for a weekly average estimate. Further, Defendant, who employed Plaintiff, should have access to records showing Plaintiff's average weekly hours or other evidence to support its assumption. *See id.* at 1130 ("Here, defendants are in the best position to adduce evidence regarding the working hours and wages of their tellers. . . . Defendants, however, failed to proffer evidence supporting their calculations regarding the amount in controversy.").

Defendant essentially asks the Court to guess that Plaintiff likely worked 16 hours of uncompensated overtime every week based on the single pay period sampling provided in the Complaint. Without any further evidence to support its argument, this "violation rate is merely an assumption, seemingly plucked from thin air," and is thus unreasonable. *Holcomb v. Weiser Sec. Servs.*, 424 F. Supp. 3d 840, 847 (C.D. Cal. 2019); *see also Weaver v. Amentum Servs., Inc.*, 202 WL 959789 (S.D. Cal. Mar. 30, 2022) ("[c]ourts in this District have previously found that assuming a violation rate that is not grounded in real evidence is arbitrary") (collecting cases). Because Defendant's assumed

violation rate is unfounded and not supported by any proffered summary judgment-type evidence, its ultimate calculation of overtime damages is unreasonable.

"Where a defendant's assumption is unreasonable on its face without comparison to a better alternative, a district court may be justified in simply rejecting that assumption and concluding that the defendant failed to meet its burden." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 996 (9th Cir. 2022). However, where a better assumption is identified, "the district court should consider the claim under the better assumption—not just zero-out the claim." *Id.* While Plaintiff does not present any alternative assumption, Defendant proposes "discount[ing] the alleged overtime damages by 50%, or $16,955.76." ECF No. 11 at 5. The Court finds this calculation to be similarly overstated and without basis in the Plaintiff's allegations. Instead, the Court will assume a 20 percent violation rate (one unpaid overtime hour worked per week)—an estimate that courts in this Circuit have consistently accepted where, as here, there are allegations of a "policy and practice" of failing to pay overtime wages. *Serrieh v. Jill Acquisition LLC*, 707 F. Supp. 3d 968, 978 (E.D. Cal. 2023); *see also Sanchez v. Abbott Laboratories*, 2021 WL 2679057, at *5 (E.D. Cal. June 30, 2021) (applying 20 percent violation rate for overtime wages where plaintiff alleged that defendant "engaged in a 'pattern and practice' of failing to pay overtime wages"); *Danielsson v. Blood Ctrs. of Pac.*, 2019 WL 7290476, at *7 (N.D. Cal. Dec. 30, 2019) ("Courts in this circuit have held that an hour of unpaid overtime per week is a reasonable estimate when the complaint alleged a 'pattern and practice' of failing to pay overtime wages").

This assumption is especially reasonable based on Plaintiff's allegations. Plaintiff alleges that Defendant required its employees to load their trailers before clocking in, Compl. ¶ 27, routinely required Plaintiff to arrive 30 minutes early to help other employees load their trailers without clocking in, *id.* ¶ 28, and required its employees complete security checks for 10-15 minutes before their shifts without clocking in, *id.* ¶

29.  These allegations of consistent, required violations, together with the allegations that employees were required to work through meal periods, *id.* ¶ 30, are sufficient to support a conservative assumption of one hour of unpaid overtime per week.  *See Arreola v. Finish Line*, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) ("[w]here . . . the plaintiff pleads that an employer has a regular or consistent practice of violating employment laws that harmed each class member, such an allegation supports a defendant's assumptions that every employee experienced at least one violation once per week").

The Court will accept Defendant's calculation of $788.64 in unpaid overtime wages during the pay period from January 16, 2024 to January 31, 2024, ECF No. 1 ¶ 21, because it is grounded in Plaintiff's specific allegations, Compl. ¶ 34.  As for the other 42 pay periods during which Plaintiff worked at ACI, *see id.* ¶ 15, the Court will assume one unpaid hour of overtime per week, which is two unpaid hours of overtime per pay period.  This results in a total of 84 hours of overtime per week at a rate of $32.86 per hour, which comes out to $2,760.24.  Altogether, the Court will assume $3,548.88 in unpaid overtime wages.

## II.     Meal and Rest Break Premiums

Under Labor Code § 226.7(c), an employer must pay a premium of one additional hour of pay at the employee's regular rate of pay for each workday that a meal or rest period is not provided.

Here, Defendant "conservatively assumes two missed meal breaks and two missed rest breaks per week, based on Plaintiff's allegations of company-wide and systematic noncompliance." *See* Complaint ¶¶ 3, 8."  ECF No. 11 at 6.  Assuming four total break violations per week across 86 weeks of employment, Defendant arrives at a damages calculation of $11,303.84.  ECF No. 11 at 6.  Plaintiff again asserts that this assumption finds no basis in the Complaint, ECF No. 13 at 5-6, and that the Court should instead fall

in line with other district courts in this Circuit which have found 20 percent violation rates reasonable in similar circumstances, *id.* at 6; ECF No. 7-1 at 6.

Plaintiff's allegations here shed some light on the frequency of the violations. Plaintiff alleges that Defendant had "an unlawful policy and practice of requiring" employees to work through meal periods, and that Plaintiff "frequently worked through her meal periods[.]" Compl. ¶ 30. Plaintiff further alleges that she was "required . . . to stay near and supervise her [work] vehicle during her meal period." *Id.* ¶ 41. In all, "Plaintiff and the class member[s] routinely experienced missed, late, short, and/or interrupted meal periods." *Id.* Defendant provides no further evidence of the frequency with which Plaintiff missed rest and meal breaks. *See* ECF No. 1-2 (Declaration of Defendant's Human Resources Manager) (absence); ECF No. 11 (absence).

Defendant attempts to analogize to *Sanchez v. Cap. Contractors Inc.*, 2014 WL 4773961, at *3 (N.D. Cal. Sept. 22, 2014), where it claims the court accepted a 100 percent violation rate assumption based on allegations of "regular," "consistent," and "systematic" violations. But in *Sanchez*, the Court actually accepted an assumption of "one meal break and one rest break for each week worked." *Id.* at *2-3. Thus, *Sanchez* does not support Defendant's argument. Defendant also cites to *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395 (2010), to argue that assumptions are reasonable "when supported by allegations of systemic violations." ECF No. 11 at 6. But there, the defendant's notice of removal was accompanied by a declaration which supported the reasonableness of the assumption. *Lewis*, 627 F.3d at 399-402. *Lewis* is thus distinct from the instant case, as there is no similar evidence proffered here to support the reasonableness of the assumption.

The Court finds *Sanchez* and other cases in the Circuit accepting 20 percent violation rates to be most persuasive. "Courts in this Circuit . . . have frequently upheld at least a 20% violation rate for purposes of CAFA amount in controversy calculations

24-cv-01821-GPC-SBC

where the plaintiff does not specify the frequency of the alleged missed meal or rest periods." *Chavez v. Pratt (Robert Mann Packaging), LLC*, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019) (collecting cases). Like the allegations of "regular," "consistent," and "systematic" violations in *Sanchez*, the Complaint here alleges a "practice" which caused Plaintiff to "frequently" and "routinely" miss breaks. Compl. ¶¶ 30, 41. Such allegations support an assumed 20 percent violation rate. *See Mendoza v. Savage Servs. Corp.*, 2019 WL 1260629, at *2 (C.D. Cal. Mar. 19, 2019) (finding a 20 percent violation rate for meal and rest period premiums appropriate where Plaintiff alleged a "pattern and practice" of violations); *Chavez*, 2019 WL 1501576, at *3 (same); *Trigueros v. Stanford Fed. Credit Union*, 2021 WL 2649241, at *3 (N.D. Cal. June 28, 2021) (same).

Accordingly, the Court will assume a 20 percent violation rate for meal and rest period premiums. With two violations assumed per week across 86 weeks of employment at a rate of $32.86 per violation, the Court finds that the amount in controversy for these claims is $5,651.92.

### III. Statutory Penalties

Defendant also assumes the maximum statutory penalties under Labor Code §§ 203, 210, and 226 in calculating the amount in controversy. ECF No. 1 ¶¶ 22-24; ECF No. 11 at 5-7. Plaintiff again responds that these assumptions have no basis in the allegations and are not supported by applicable case law. ECF No. 7-1 at 6-7; ECF No. 13 at 4-5, 7-8. The Court will consider the potential statutory penalties in turn.

**A. Penalties Under Labor Code § 203**

Labor Code § 203 provides for waiting time penalties of up to 30 days for unpaid wages at the employee's daily rate. Defendant's notice of removal assumes a maximum 30 days of penalties based on the alleged "failure to timely pay Plaintiff . . . continued wages for 30 days." ECF No. 1 ¶ 23. In fact, the Complaint specifically alleges that

"Defendants willfully failed and continue to fail in their affirmative obligation to pay all wages earned and unpaid to Plaintiff and class members . . ., and further failed to pay those sums for 30 days thereafter in violation of Labor Code sections 201 through 203[.]" Compl. ¶ 97. Accordingly, Defendant's inclusion of maximum penalties under Labor Code § 203 are grounded in the Complaint, which alleges 30 days of continuous violations, which are still ongoing. *See Valero v. MKS Instruments*, 2025 WL 72171, at *5 (C.D. Cal. Jan. 8, 2025) ("for a putative class member to recover 30 days' worth of his or her salary, the injury need only have lasted for more than 30 days—which is necessarily true if, as [plaintiff] alleges, the Labor Code violations remain ongoing").

Plaintiff's cited cases do not alter the Court's conclusion. Plaintiff cites *Louis v. Healthsource Glob. Staffing, Inc.*, 2022 WL 4866543, at *2 (N.D. Cal. Oct. 3, 2022), for the proposition that assuming a 100 percent violation rate of Labor Code § 203 is sometimes not warranted. But in that very case, the court found the maximum penalty reasonable based on the allegations and record before it. *Id.* at *1-2. Plaintiff also references *Moore v. Dnata Inflight Catering LLC*, 2021 WL 3033577, at *2 (N.D. Cal. July 19, 2021), but the court there acknowledged that "the complaint itself may allege facts that make a 100% incident rate a reasonable inference." *Id.* Ultimately, however, such facts were not present in *Moore*, and thus the court found the maximum waiting time penalties to be unreasonable. *Id.* Accordingly, the instant case is distinguishable from *Louis* and *Moore* because the allegations here support the maximum penalty.

The Court thus finds it reasonable to infer maximum waiting time penalties under Labor Code § 203. Here, Plaintiff's hourly wage was $32.86, which makes her daily rate $262.88. When multiplied by 30 days, the maximum waiting time penalty would be $7,866.40. *See* ECF No. 1 ¶ 23.

### B. Penalties Under Labor Code § 210

Labor Code § 210 provides that any employer who fails to timely pay wages in violation of the Labor Code's provisions must pay a penalty of $100 for the initial violation, plus $200 for each subsequent violation, plus 25 percent of the amount unlawfully withheld for each subsequent violation. Defendant argues that Plaintiff would be entitled to maximum penalties for all 43 pay periods for which she was employed, which would amount to $8,500 in penalties. ECF No. 11 at 5-6.[4] Plaintiff again argues that she does not allege that "she suffered a violation every pay period," and there is no other evidence to support the maximum penalty. ECF No. 13 at 4-5.

The Court has already assumed that Defendant committed one meal break premium and one rest break premium violation per week. *See supra* Section II. The Court will also assume that Plaintiff was not receiving all wages for each period during her employment because, at the very least, Defendant was failing to pay Plaintiff meal and rest break premiums each period. *See McCollum v. TGI Friday's, Inc.*, 2022 WL 2663870, at *7 (C.D. Cal. July 11, 2022) ("[i]n light of . . . the court's findings above that Defendant has reasonably assumed one meal and rest break violation per pay periods . . . the court finds it reasonable for Defendant to assume that the 26 pay periods in which a rest or meal break violation occurred resulted in the failure to pay wages owed on account of those alleged violations"). The Court further emphasizes Plaintiff's allegations throughout the Complaint, which allege a pattern and practice of routine and regular violations. *See, e.g.,* Compl. ¶¶ 27-28, 30, 41-43. Based upon these allegations,

---

[4] Defendant arrives at this number after initially arguing in its notice of removal that Plaintiff's allegations can plausibly support up to $130,000 in damages. *See* ECF No. 1 at 7-8 ¶ 22. Plaintiff, in her motion to remand, noted that Labor Code § 210's penalty only applies once per pay period, as opposed to Defendant's contention that it could apply every workday. ECF No. 7-1 at 7. Defendant then walked back its estimate in opposing the motion to remand, which resulted in the estimate the Court will now consider. *See* ECF No. 11 at 5-6.

the Court can safely assume that there was at least one Labor Code violation which resulted in failure to pay all wages owed to Plaintiff each pay period.

Therefore, the Court finds Plaintiff's calculation of $8,500 in penalties under Labor Code § 210 to be reasonable.[5]

### C. Penalties Under Labor Code § 226

Labor Code § 226(a) requires employers to provide accurate itemized wage statements to their employees each pay period. Labor Code § 226(e) provides a statutory penalty of $50 per pay period for the initial violation and $100 per pay period for each subsequent violation. Defendant asserts that "Plaintiff's allegations support the maximum statutory penalty of $4,000." ECF No. 11 at 7; *see also* ECF No. 1 ¶ 24. Plaintiff responds that there is no supporting evidence in the Complaint, or otherwise, to support this assumption. ECF No. 1 at 7-8.

The Court finds that the reasoning which supported the maximum penalty under Labor Code § 210 also supports the maximum penalty under § 226. *See supra* Section III.B. Specifically, Plaintiff's allegations and the Court's previously accepted assumptions support a reasonable inference that Defendant failed to provide accurate wage statements to Plaintiff each pay period. *See id.* The Court therefore finds Plaintiff's assumption of $4,000 in penalties under Labor Code § 226 to be reasonable.

## IV. Attorneys' Fees

"[A] court must include the future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018). "A defendant does 'not need to prove to a legal certainty' that a plaintiff will be awarded the proffered attorneys'

---

[5] Defendant, likely in the interest of making its estimates seem conservative, does not include in its calculation the additional 25 percent of the amount unlawfully held which the Plaintiff seeks, and which Labor Code § 210 allows. *See* Compl. ¶ 89.

fees in the removal notice." *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 n.4 (9th Cir. 2020) (quoting *Dart Cherokee*, 574 U.S. at 88). Instead, "[t]he estimated attorneys' fees must simply be reasonable." *Anderson*, 556 F. Supp. 3d at 1138 (citing *Greene*, 965 F.3d at 774 n.4).

Here, Defendant's notice of removal does not provide an estimated figure, but rather argues in a conclusory fashion that the inclusion of attorneys' fees will push the amount in controversy over $75,000. ECF No. 1 at 8-9 ¶¶ 22-24. In its opposition, Defendant more specifically claims that 25 percent of Plaintiff's individual damages is a reasonable estimate given the complexity and length of wage and hour claims. ECF No. 11 at 8.

Plaintiff first argues that, since this is a putative class action, the Court should only consider Plaintiff's pro rata share of the total class-wide attorneys' fees. ECF No. 7-1 at 10; ECF No. 13 at 9. Plaintiff cites several cases in support of this proposition, such as *Caballero v. Fidelitone Last Mile, Inc.*, 2020 WL 7350214, at *1 (N.D. Cal. Dec. 15, 2020), where the court held that "for purposes of determining the amount in controversy in class action cases, attorneys' fees must be calculated on a pro-rata basis." *See* ECF No. 7-1 at 10. While Plaintiff's assertion is correct, the Court finds that Defendant's calculation based on Plaintiff's proportion of potential damages comports with this rule. This calculation reflects Plaintiff's pro rata share of future attorneys' damages because it is based only on Plaintiff's share of the recovery. Plaintiff's objection would be compelling if, for example, Defendant calculated 25 percent of the total class recovery and added it to Plaintiff's individual amount in controversy. But that is not the case here. Accordingly, the Court rejects Plaintiff's argument that Defendant did not properly calculate a pro rata share of the class-wide attorneys' fees.

Plaintiff further argues that the Court should reject Defendant's 25 percent estimate of attorneys' fees because it has not been proven by a preponderance of the evidence.

ECF No. 7-1 at 10; ECF No. 13 at 8-9. Plaintiff asserts that the Ninth Circuit rejected a 25 percent assumption in *Fritsch*. ECF No. 13 at 8. But in *Fritsch*, the court acknowledged that it has "estimated reasonable attorneys' fees to be 25 percent of the total recovery" in common fund cases. 899 F.3d at 796. However, the court rejected a per se rule that, "as a matter of law, the amount of attorneys' fees in controversy in class action in 25 percent of all other alleged recovery." *Id.* The court's rejection of a per se rule does not signal a rejection of all 25 percent assumptions. In fact, many courts in the Circuit have accepted 25 percent estimates as reasonable. *See Anderson*, 556 F. Supp. 3d at 1138 ("Courts in our circuit have treated a potential 25% fee award as reasonable") (internal citation omitted); *Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403, at *12 (C.D. Cal. May 9, 2018) ("other courts in this Circuit have similarly applied a [25 percent] benchmark figure to calculate attorneys' fees in CAFA wage and hour cases") (collecting cases); *Valero*, 2025 WL 72171, at *5 ("Courts have generally found that it is reasonable to use a 25% benchmark when calculating the amount in controversy for the purpose of diversity jurisdiction"); *see also Greene*, 965 F.3d at 774 n.4 (finding a 25 percent attorneys' fees estimate to be reasonable). The Court will follow the other courts in this Circuit and accept Defendant's 25 percent estimate for attorneys' fees reasonable.

V.  **Total Amount in Controversy**

The Court must now determine whether the sum of the estimated amount in controversy exceeds $75,000. The accepted estimates are as follows:

- $3,548.88 in unpaid overtime wages;
- $5,651.92 in meal and rest break premiums;
- $7,866.40 in waiting time penalties;
- $8,500 in untimely payment of wages penalties;
- $4,000 in wage statement violations penalties.

The sum of these estimates brings the amount in controversy to $29,567.20 in damages. Assuming a 25 percent benchmark for attorneys' fees, Plaintiff would be entitled to an estimated $7,391.80 in attorneys' fees. Accordingly, the total estimated amount in controversy is $36,958.75. This total falls short of the $75,000 required for the Court to exercise diversity jurisdiction. Accordingly, the Court is without removal jurisdiction under 28 U.S.C. § 1332.

## CONCLUSION

Defendant has not met its burden of showing by a preponderance of the evidence that removal is proper based on diversity jurisdiction. Accordingly, the Court GRANTS Plaintiff's motion to remand.

**IT IS SO ORDERED.**

Dated: January 24, 2025

Hon. Gonzalo P. Curiel
United States District Judge